# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| IN RE EXTRADITION OF | ) | |
|---|---|---|
| ESTEBAN RIOS SARELLANO | ) | Case No. M-15-75-CG |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The United Mexican States has asked the United States of America through diplomatic channels to arrest and extradite Esteban Rios Sarellano, who is accused of aggravated homicide in the November 2003 death of Gonzalo Sifuentes Martinez. *See* Compl. (Doc. No. 1) ¶¶ 3-4, 6. Having considered the full record, the parties' briefs, and the applicable law, the undersigned Magistrate Judge finds that aggravated homicide is an extraditable offense under the extradition treaty presently in force between the United States and Mexico, and that there is probable cause to believe that Mr. Rios committed the offense charged within Mexico's jurisdiction. *See* 18 U.S.C. § 3184. Accordingly, the court **CERTIFIES** Esteban Rios Sarellano as subject to extradition under 18 U.S.C. § 3184.

## I. Legal Standards

The procedures for extraditing a fugitive from the United States to Mexico are governed by the federal extradition statutes, 18 U.S.C. §§ 3181-3196, and the 1978 extradition treaty between the United States of America and the United Mexican States. *In re Extradition of Vargas*, 978 F. Supp. 2d 734, 738 (S.D. Tex. 2013). As relevant here, Mexico initiates the diplomatic process for such an extradition by submitting to the U.S. Department of State a formal request for the extradition of a person charged with or

1

found guilty of an extraditable offense committed within Mexico's jurisdiction. *See* Extradition Treaty, Mex.-U.S., arts. I, X, May 4, 1978, 31 U.S.T. 5059 (entered into force Jan. 25, 1980); *Vargas*, 978 F. Supp. 2d at 739. Once the Department of State determines that the request is sufficient, *see* Extradition Treaty, *supra*, art. XII, the appropriate United States Attorney files a complaint in federal district court charging the alleged fugitive with having committed an extraditable offense and seeking a warrant for that person's arrest pending an extradition hearing before an authorized judicial officer. 18 U.S.C. § 3184; *see Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005).

The federal statutes establish a two-step procedure that divides responsibility for extradition between an authorized judicial officer and the Secretary of State. *United States v. Kin-Hong*, 110 F.3d 103, 109 (1st Cir. 1997) (citing 18 U.S.C. §§ 3184, 3186). The judge's role in these proceedings is limited to determining whether the accused is subject to extradition under the terms of 18 U.S.C. § 3184 and the applicable extradition treaty. *See* 18 U.S.C. § 3184; *Sidali v. INS*, 107 F.3d 191, 194-95 (3d Cir. 1997); *Lo Duca v. United States*, 93 F.3d 1100, 1104 (2d Cir. 1996); *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 828 (11th Cir. 1993). If, after a hearing on "the evidence of criminality against a person sought to be extradited," *Prasoprat*, 421 F.3d at 1012, the judge

> deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, . . . he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for

> the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184. The judge "has no discretionary decision to make" in proceedings under § 3184. *Prasoprat*, 421 F.3d at 1012 (internal quotation marks omitted). "Rather, if the evidence is sufficient to sustain the charge" on which extradition is sought, the judge must "certify the individual as extraditable" and issue a warrant for his or her detention. *Id.* (alteration and internal quotation marks omitted).

If such a certification is issued, the Secretary of State then decides whether the alleged fugitive should be surrendered to foreign officials. *Kin-Hong*, 110 F.3d at 109; *see* 18 U.S.C. § 3186 (providing that the Secretary of State "may order the person committed under section[] 3184 . . . to be delivered to any authorized agent of such foreign government[] to be tried for the offense of which [the person is] charged"). Unlike the extradition judge, "[t]he Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant" and foreign relations in determining whether to issue a warrant of surrender. *Martin*, 993 F.2d at 829.

## II. Background

In April 2014, Mexico asked the United States through diplomatic channels to arrest and extradite Mr. Rios, who is charged in the State of Zacatecas with aggravated homicide in the November 2003 shooting death of Gonzalo Sifuentes Martinez. *See* Compl. ¶¶ 3-4, 6. The United States Attorney for the Western District of Oklahoma filed a Complaint for Extradition on March 5, 2015, and the Court issued an arrest warrant the same day (Doc. No. 2). Mr. Rios was arrested in Oklahoma City, Oklahoma, on May 21,

3

2015 (Doc. No. 14). He has been detained since that time. Following Mr. Rios' request for a continuance to allow transcription of certain documents, the undersigned held an extradition hearing on June 30, 2015 (Doc. No. 21). The parties then submitted supplemental briefs. *See* Doc. Nos. 24, 32.

## III. Discussion

The United States bears the burden of establishing, among other things, that (1) the presiding judge has authority to conduct this extradition proceeding, (2) aggravated homicide is an extraditable offense under an extradition treaty in full force and effect between the United States and Mexico, and (3) competent evidence provides probable cause to believe that Mr. Rios committed aggravated homicide as charged in the complaint for extradition. *See In re Extradition of Santos*, 795 F. Supp. 2d 966, 969-70 (C.D. Cal. 2011); *In re Extradition of Mainero*, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997) (citing *Bingham v. Bradley*, 241 U.S. 511 (1916)). In making these determinations, the presiding judge must consider properly authenticated documents that the United States submitted with its complaint. *In re Extradition of Chan Seong-I*, 346 F. Supp. 2d 1149, 1161 (D.N.M. 2004). Mr. Rios' right to submit evidence in this proceeding, on the other hand, is committed to the presiding judge's sound discretion and generally limited to presenting evidence that "explains away" the government's evidence or "completely rebuts the existence of probable cause." *Vargas*, 978 F. Supp. 2d at 748; *see also Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973); *In re Extradition of Cheung*, 968 F. Supp. 791, 794 n.6 (D. Conn. 1997).

*A.     Jurisdiction*

"The extradition statutes expressly allow federal magistrate judges to hear and decide extradition cases if 'authorized to do so by a court of the United States.'" *In re Extradition of Nezirovic*, No. 7:12-mc-39, 2013 WL 5202420, at *3 (W.D. Va. Sept. 16, 2013) (quoting 18 U.S.C. § 3184). This Court customarily authorizes magistrate judges to decide extradition cases, and neither party has questioned the undersigned's authority to conduct the proceedings in this case. *See In re Procedure for Referral of Civil and Criminal Matters to Full Time Magistrates of the United States District Court for the Western District of Oklahoma*, Misc. Order No. 22 (W.D. Okla. Feb. 19, 1991); *e.g.*, *Smith v. United States*, 82 F.3d 964, 965 (10th Cir. 1996).[1] *See generally DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("[A] party's failure to object to allocation of an issue to a magistrate judge forfeits that position, even if it turns out that the magistrate judge should not have participated." (citing *Peretz v. United States*, 501 U.S. 923, 936-37 (1991)). Further, Mr. Rios does not dispute that he is the individual charged in the United States' Complaint for Extradition or that the undersigned may exercise personal jurisdiction over him in this proceeding. 18 U.S.C. § 3184; *see* Resp.'s Br. (Doc. No. 24) at 1-2, 7.

---

[1] While technically not criminal cases, *see United States v. Reumayr*, 530 F. Supp. 2d 1200, 1205-06 (D.N.M. 2007), extradition proceedings are related matters customarily within federal magistrate judges' jurisdiction. *See Austin v. Healey*, 5 F.3d 598, 602-03 (2d Cir. 1993) (citing 18 U.S.C. § 3184; 28 U.S.C. § 636(a)).

B.    *Extraditable Offense*

On June 9, 2014, Judge Sergio Mercado Camarillo, the Second Trial Court Judge for Family and Criminal Matters of the Judicial District of Sombrerete, Zacatecas, issued an arrest warrant charging Mr. Rios with aggravated homicide in the November 22, 2003 shooting death of Gonzalo Sifuentes Martinez.[2]  *See* Gov't's Ex. 3 (admitted into evidence at hearing of June 30, 2015).  Aggravated homicide is the act of intentionally taking another person's life "with premeditation, treachery, unfair advantage, or betrayal."  Gov't's Ex. 2 (citing Zacatecas Crim. Code tit. 17, arts. 293, 301) (admitted into evidence at hearing of June 30, 2015).

---

[2] At the extradition hearing, Mr. Rios questioned whether an arrest warrant alone provided sufficient evidence that he has been "charged with" aggravated homicide. *See* Extradition Treaty, *supra*, art. I, ¶ 1 (providing that the requested Party's "[o]bligation to [e]xtradite" extends to "persons who the competent authorities of the requesting Party have charged with an offense" "committed within the territory of the requesting Party"). Under the treaty's terms, Mexico's request for extradition in this case must contain, among other items, a "description of the offense for which extradition is requested," "[a] certified copy of the warrant of arrest issued by a judge or other judicial officer," and evidence that, under United States law, "would justify the apprehension and commitment for trial of the person sought" had the offense been committed in this country. Extradition Treaty, art. X, ¶¶ 2, 3.  The treaty does not require Mexico to submit a separate document akin to an indictment or felony information. *Id.*; *see also Zhenli Ye Gon v. Holt*, 774 F.3d 207, 219 (4th Cir. 2014) (discussing "the allegations contained in the Mexican arrest warrant *or other* charging documents" (emphasis added)). Moreover, Judge Mercado Camarillo's arrest warrant "is a charging document" in the sense that "it identifies the offense in the [Zacatecas] criminal code, sets out the essential facts of the alleged crime, and details the evidentiary basis for the charge." *Martinez v. United States*, 793 F.3d 533, 543-44 (6th Cir. 2015) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.")).  *See generally* Gov't's Ex. 3.  Accordingly, the June 9, 2014 arrest warrant establishes that Mr. Rios has been properly "charged with" the offense of aggravated homicide as required by Article I of the Extradition Treaty.

6

The parties agree that the U.S.-Mexico extradition treaty is in full force and effect and that aggravated homicide—a crime most analogous to murder as defined in 18 U.S.C. § 1111—is an extraditable offense under that treaty. Extradition Treaty, *supra*, art. 2, app. ¶ 1; *see also In re Extradition of Fuentes*, No. 13-mj-1026, 2013 WL 2153537, at *2 (D. Colo. May 16, 2013) (citing 18 U.S.C. § 1111) (finding the crime of aggravated homicide an extraditable offense under the Extradition Treaty); *In re Extradition of Diaz Medina*, 210 F. Supp. 2d 813, 816 (N.D. Tex. 2002) (same).

According to the June 9, 2014 arrest warrant, Judge Mercado Camarillo found sufficient evidence to charge Mr. Rios with aggravated homicide by "treachery *and* unfair advantage." Gov't's Ex. 3 (emphasis added). To satisfy its burden under § 3184, however, the United States need only establish probable cause to believe that Mr. Rios intentionally killed Sifuentes Martinez by treachery *or* unfair surprise. *See Diaz Medina*, 210 F. Supp. 2d at 819-20. The former "exists when someone is intentionally taken by surprise or ambushed," while the latter "exists when the [accused] is in no danger of being killed or bodily injured by the victim." *See generally* Gov't's Ex. 2 (citing Zacatecas Crim. Code tit. 17, arts. 293, 301).

C.  *Probable Cause*

   1.  *Relevant Evidence*

On November 22, 2003, Mexican ministerial police received a report that Gonzalo Sifuentes Martinez had been "murdered" and Armando Martinez Martinez wounded that evening in Chalchiuites, Zacatecas. *See* Gov't's Ex. 2. Rodolfo Martinez Martinez, the Gonzalo's uncle and Armando's brother, showed the public prosecutor and police where

7

he discovered Gonzalo's body lying next to a busy highway. *See id.* Rodolfo said that Armando was found at the same location, bleeding from wounds to his head and neck. Police observed "two blood lakes" and recovered a .38 caliber bullet casing from the opposite side of the highway. *See id.*

Armando provided a sworn statement to police on November 27, 2003. He stated that on November 22, 2003, Gonzalo took his uncle Armando and several of their other family members to a rodeo in a nearby town. Gov't's Ex. 2. Armando was driving the family back home when a yellow pickup truck "invaded the lane in which he was traveling." *Id.* Armando swerved, and the pickup truck sped past him "by a short distance." *Id.* But the pickup truck driver "backtracked and later stopped." *Id.* Armando pulled over his van, got out, and approached the truck's driver-side door. *Id.* The driver started shooting a revolver-type handgun as Armando opened the door. *See id.* A bullet struck Armando in the left chest. Armando recognized the driver as Esteban Rios Sarellano, a person who lived in the same town as Armando. *Id.* Armando tried to wrestle the gun away, but Esteban broke free and shot at Armando again. A second bullet hit Armando in the right arm. *Id.*

Gonzalo approached the pickup truck around the same time. Armando told police that "he saw [Esteban] point at his nephew with the handgun and shoot at him, though he could not remember how many times." *Id.* "Realizing that his nephew had fallen to the ground," Armando "tried again to grab the weapon from" Esteban "so he would not shoot at them anymore." A third bullet hit Armando in the neck below the chin. *Id.* When Esteban ran out of ammunition, he "began to hit [Armando] on the head" with the barrel

8

of the gun.  *Id.*  Esteban soon stopped hitting Armando and went to his truck to reload his weapon.

Armando made it back to his van, where he could see Esteban reloading the revolver.  "[A]t the same time, [Armando] realized that this wife was telling him not to do more damage[] because he was wounded."  *Id.*  Armando woke up in a doctor's office sometime later.  He told police that "this is when he learned his nephew Gonzalo Sifuentes Martinez had died due to the bullet wounds he received at the scene of the incident."  *Id.*

Armando's wife, Margarita Sifuentes Meir, corroborated her husband's recollection in a sworn statement to police dated December 19, 2003.  *See* Gov't's Ex. 2.  Margarita told police that she witnessed Esteban shoot twice at Gonzalo as he got out of their van, and that Gonzalo "immediately fell down to the floor facing up."  *Id.*  Margarita also told police that Esteban "was the only one" on the scene "who was carrying a firearm."  *See* Gov't's Ex. 3.  A third eyewitness, Esteban's traveling companion Saul Perez Rodarte, confirmed to police that he "saw [Esteban] shooting Armando and Gonzalo from the door of the truck" and that neither Armando nor Gonzalo was armed.  *Id.*

An autopsy report confirmed that Gonzalo died on November 22, 2003, of gunshot wounds to the chest and abdomen.  Gov't's Ex. 2.  According to a police report, the two bullets removed from Gonzalo's body came from a .38 caliber Smith and Wesson revolver.  *See* Gov't's Ex. 3.

9

On August 13, 2013, Armando and Margarita went to the Attorney General's Office in Zacatecas to "identify the fugitive who is liable" for having killed Gonzalo nearly a decade earlier. *See* Gov't's Ex. 2. Armando and Margarita each unequivocally (and apparently separately) selected Esteban's photograph out of a six-photograph array. *Id.* Armando explained that he knew Esteban because he was "native to Chalchihuites" and Armando used to buy seeds from Esteban's father. Margarita did not know Esteban before she witnessed him shoot her husband and nephew on November 22, 2003.

2. *Analysis*

The evidence outlined above provides probable cause to believe that Esteban Rios Sarellano committed aggravated homicide with unfair advantage when he allegedly shot and killed Gonzalo Sifuentes Martinez. First, Armando Martinez Martinez identified Mr. Rios, whom he said he recognized from his hometown, as the shooter in a sworn statement made just four days after their hand-to-hand struggle. Armando Martinez Martinez and Margarita Sifuentes Meir also separately identified Mr. Rios in photo lineups as the person who shot Gonzalo Sifuentes Martinez on November 22, 2003. Mr. Rios does not challenge the adequacy or procedural propriety of these photo lineup identifications. Second, the autopsy report establishes that Gonzalo Sifuentes Martinez died on that date as the result of gunshot wounds to his chest and abdomen. Finally, two eyewitnesses averred that Mr. Rios was the only one on the scene carrying a gun and that Mr. Rios started shooting at Armando Martinez Martinez and Gonzalo Sifuentes Martinez from the safety of his truck. *See In re Flores Ortiz*, No. 10-MJ-2016, 2011 WL 3441618, at *11 (S.D. Cal. Feb. 9, 2011) (finding that three witnesses' sworn statements

recounting similar facts and an autopsy report provided probable cause to certify extradition to Mexico on charge of aggravated homicide with unfair advantage).

Mr. Rios does not contest that the United States carried its burden under 18 U.S.C. § 3184. *See generally* Resp.'s Br. at 7-11. Instead, citing the Convention Against Torture ("CAT"), Mr. Rios asserts that this Court "should deny" certification, *id.* at 11, because he has applied for asylum in this country to escape the "substantial likelihood" that, if he returns to Mexico, Gonzalo Sifuentes Martinez's surviving family members (or government officials acting at their behest) will subject him to "physical violence amounting to torture." *Id.* at 9. Even so, Mr. Rios acknowledges that the court "must certify" the United States' request if it finds that the United States satisfied 18 U.S.C. § 3184's threshold requirements and the Court "determines there is no other basis *within the treaty* for denying extradition." Resp.'s Br. at 1 (emphasis added).

The undersigned concludes that Mr. Rios' torture claim is properly presented to the Secretary of State and provides this Court no discretion to decline certification. *See In re Extradition of Mironescu*, 296 F. Supp. 2d 632, 637-38 (M.D.N.C. 2003) ("[T]he Torture Convention does not obligate magistrate judges, during an initial extradition hearing, to consider the human rights conditions in the country [that] is seeking extradition of one of its citizens. In fact, there exists no authority on which a magistrate judge could base such a consideration in light of the limited scope set out for extradition hearings." (citing United Nations Convention Against Torture, Feb. 4, 1985, 24 I.L.M. 535)). As explained by another court, "It is not that questions about what awaits" Mr. Rios if the United States returns him to Mexico "are irrelevant to extradition; it is that

11

there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed." *Kin-Hong*, 110 F.3d at 111. Indeed, "the Secretary of State *must* make a torture determination before surrendering an extraditee" who raises a claim under the Convention Against Torture. *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012); *accord Mironescu v. Costner*, 480 F.3d 664, 665-67, 674-77 (4th Cir. 2007).[3]

Mr. Rios also asserts that extraditing him now would deny him the "opportunity to litigate his [asylum] claims through the process prescribed by Congress," in violation of the Fifth Amendment's Due Process Clause. Resp.'s Br. at 10. Generally, asylum and extradition proceedings are separate matters and "a decision on the former [does not have] legally preclusive effect on the latter." *Castaneda-Castillo v. Holder*, 638 F.3d 354, 361 (1st Cir. 2011) (stating "although asylum and extradition proceedings are related insofar as they both bear on whether [the alleged fugitive] will ultimately be forced to return to [his home country], they are rooted in distinct sources of law, governed by procedures specified in distinct statutory regimes, and responsive to different sets of

---

[3] Consistent with this analysis, courts have denied petitions for 28 U.S.C. § 2241 habeas relief alleging the possibility of torture upon extradition when such petitions were submitted after a judge's § 3184 certification of an individual as extraditable but prior to the Secretary's determination of whether extradition should proceed. *See, e.g.*, *Meza v. U.S. Att'y Gen.*, 693 F.3d 1350, 1356-57 (11th Cir. 2012) ("Yacaman's argument that the Convention Against Torture bars his extradition 'is not ripe for adjudication . . . [because] it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (alteration in original) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *Zhenli Ye Gon v. Holder*, 992 F. Supp. 2d 637, 663-64 (W.D. Va. 2014) (holding that the district court, on a petition for writ of habeas corpus under 28 U.S.C. § 2241, did not have jurisdiction to consider petitioner's "risk of torture" argument because "it could be mooted by the Secretary of State's extradition decision, which ha[d] not yet been made").

policy concerns"). Mr. Rios points to no authority supporting his assertion that he has a right to resolve his asylum claims before this Court can certify his extradition, and courts have rejected this view in other contexts. *See Barapind v. Reno*, 225 F.3d 1100, 1103 (9th Cir. 2000) (holding that the Board of Immigration Appeals may hold an "asylum petition in abeyance pending the resolution of [the petitioner's] parallel extradition proceedings in federal district court"); *Masopust v. Fitzgerald*, No. 2:09-cv-1495, 2010 WL 324378, at *3 (W.D. Pa. Jan. 21, 2010) (rejecting habeas petitioner's argument "that the due process clause precludes his extradition until there has been an adjudication, in removal proceedings of his [torture] claims" (alteration, emphasis, and internal quotation marks omitted)).

IV. Conclusion

For the foregoing reasons, the Court concludes that the terms of 18 U.S.C. § 3184 and the extradition treaty between the United States and Mexico are met in this case. Specifically, the Court finds that:

1. There is an extradition treaty in force between the United States of America and the United Mexican States;

2. This Court has jurisdiction to certify the extradition of Esteban Rios Sarellano pursuant to 18 U.S.C. § 3184;

3. There is a criminal charge pending against Esteban Rios Sarellano in Mexico charging him with aggravated homicide in connection with the November 22, 2003 shooting death of Gonzalo Sifuentes Martinez;

4. This charged offense is an extraditable offense within the terms of the U.S.-Mexico extradition treaty;

5. The Esteban Rios Sarellano who appeared before this Court is the same person who is charged with aggravated homicide in Mexico; and

6. There is probable cause to believe that Esteban Rios Sarellano committed the charged offense.

Accordingly, this matter is CERTIFIED to the Secretary of State in order that a warrant may issue for the surrender of Esteban Rios Sarellano to the proper authorities of Mexico in accordance with the U.S.-Mexico extradition treaty.

It is ORDERED that Esteban Rios Sarellano is committed to the custody of the United States Marshal, or his authorized representative, to be confined in appropriate facilities pending further proceedings under 18 U.S.C. § 3186, and to remain until he is surrendered to Mexico pursuant to applicable provisions of the U.S.-Mexico extradition treaty and United States law, or released by order of an authorized court or the Secretary of State.

It is further ORDERED that the United States Attorney for this judicial district shall forward a copy of this Memorandum Opinion and Order, together with a copy of all transcripts of proceedings and copies of documents received into evidence in this matter, to the Secretary of State.

IT IS SO ORDERED this 15th day of October, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE